UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RHYNETTIA B.,[1] | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *v.* | ) | No. 1:22-cv-504-MG-JRS |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| *Defendant.* | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

In June 2019, Plaintiff Rhynettia B. applied for Title II Disability Insurance Benefits ("DIB") from the Social Security Administration ("SSA"), alleging a disability onset date of February 2, 2018. [Filing No. 7-5 at 4-10.] Her application was initially denied on December 12, 2019, [Filing No. 7-4 at 2-7], and upon reconsideration on October 22, 2020, [Filing No. 7-4 at 8-17]. Administrative Law Judge Shelette Veal (the "ALJ") conducted a telephonic hearing on July 1, 2021. [Filing No. 7-2 at 35-55.] The ALJ issued a decision on July 14, 2021, concluding that Rhynettia B. was not entitled to receive benefits. [Filing No. 7-2 at 28.] The Appeals Council denied review on January 26, 2022. [Filing No. 7-2 at 1-4.] On June 22, 2021, Rhynettia B. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 10.] For the following reasons, the Court **AFFIRMS** the decision of the ALJ denying Rhynettia B. benefits.

## I.
### STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built

---

[2] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform His past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform His own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's

decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Rhynettia B. was 48 years old on February 2, 2018—the date of her alleged onset of disability. [Filing No. 7-6 at 1.] The ALJ found that Rhynettia B. last met the insured status requirements of the SSA on September 30, 2020, she had earnings in 2018, 2019, and 2020, but they did not exceed substantial gain activity levels. [Filing No. 7-2 at 23.] Rhynettia B. has completed a GED and has past work experience as a bow-string maker. [Filing No. 7-6 at 6.] Rhynettia B.'s June 2019 application alleges that she can no longer work because she has severe depression/bi-polar disorder, PTSD, pain in hips, limited in her walking or laying down, and arthritis in her back. [Filing No. 7-6 at 5.] Following the July 2021 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Rhynettia B. was not disabled. [Filing No. 7-2 at 18-28.] Specifically, the ALJ found as follows:

- At Step One, Rhynettia B. has not engaged in substantial gainful activity[3] since February 2, 2018 (the application date). [Filing No. 7-2 at 23.]

- At Step Two, Rhynettia B. "had the following severe impairments: lumbar degenerative disc disease with spondylosis, foraminal narrowing, and disc protrusion; chronic pulmonary disease; left hip labral tear and femoral acetabular

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

4

- impingement syndrome; and right hip degenerative joint disease." [Filing No. 7-2 at 23.]

- At Step Three, Rhynettia B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 7-2 at 25.] The ALJ specifically considered Listings 1.15 1.16, and 3.02. [Filing No. 7-2 at 25.] As to the "paragraph B" criteria for Listings 12.04 and 12.08, the ALJ found that Rhynettia B. had "mild" limitations in all four areas: (1) interacting with others, (2) concentrating, persisting, or maintaining pace ("CPP"), (3) understanding, remembering, or applying information and (4) adapting or managing oneself. [Filing No. 7-2 at 24.]

- After Step Three but before Step Four, Rhynettia B. had the RFC "to perform light work as defined in 20 CFR 404.1567(b), except occasional climbing of ramps or stairs; never climbing ladders, ropes or scaffolds; occasional balancing on level surfaces; and occasional stooping, kneeling, crouching, and crawling. She must avoid concentrated exposure to fumes, odors, dust and gases. " [Filing No. 7-2 at 25.]

- At Step Four, the ALJ found Rhynettia B. could perform past relevant work as a bow-string maker. [Filing No. 7-2 at 28.]

- At Step Five, the ALJ found Rhynettia B. was not under a disability from February 2, 2018, the alleged onset date, through September 30, 2020, the date last insured. [Filing No. 7-2 at 28.]

## III.
### DISCUSSION

Rhynettia B. argues that: (1) the ALJ and vocational expert ("VE") failed at Step Four when defining and categorizing her past relevant work by not considering her testimony about how she performed her job; and (2) the ALJ failed to properly explain why nurse Kathy Mullin's medical opinion was inconsistent with a finding of disability. [Filing No. 12 at 4.]

### A.   Step Four Finding

Rhynettia B. contends that the ALJ did not consider her testimony about how she performed her job when determining at Step Four that she could perform her past relevant work as a bow-string maker. [Filing No. 12 at 22.] She argues that the ALJ erred by failing to discern the specific functions of her past relevant work before concluding she could return to that work. [Filing

No. 12 at 22.] Specifically, she argues that she testified that "while making the strings she had to pull, twist, turn and stoop a lot and it became too difficult with her severe back pain." [Filing No. 12 at 22.] Further, she contends that she told her treating physician that her pain forced her to switch jobs because she cannot stand for long periods of time. [Filing No. 12 at 22 (*citing* Filing No. 7-7 at 20).] Lastly, Rhynettia B. contends that the ALJ found she could perform her past relevant work as "actually" performed. [Filing No. 12 at 22.]

The Commissioner contends that the ALJ reasonably found Rhynettia B. not disabled because she could perform her past relevant work as a bow-string maker as generally performed, and that finding was consistent with the VE's testimony. [Filing No. 14 at 4.] The Commissioner argues that the VE "testified that an individual limited to a range of light work with a sit-stand option, among other limitations, could perform the job as a bow-stringer." [Filing No. 14 at 4 (*citing* Filing No. 7-2 at 40-42, 51-52).] The Commissioner notes that the ALJ did not find, and the VE did not explicitly testify, that Rhynettia B. could perform the past relevant job as actually performed but did reasonably conclude she could perform the job as generally performed as defined in the DOT. [Filing No. 14 at 4.] The Commissioner finds error with Rhynettia B.'s argument that the ALJ did not consider her testimony on how she performed her job, contending that

A claimant is not disabled at Step Four of the sequential evaluation if she could perform her past relevant work either as generally performed *or* as she actually performed it. *See* SSR 82-62; 20 C.F.R. § 404.1560(b) (emphasis added). Although not required at Step Four of the sequential evaluation, an ALJ may enlist a vocational expert to "offer expert opinion in response to a hypothetical question" about whether "physical or mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work." 20

6

C.F.R. § 416.960(b). A hypothetical question is proper when it reflects the "impairments to the extent the ALJ found them supported by evidence in the record." *Ehrhart v. Secretary*, 969 F.2d 534, 540 (7th Cir. 1992). Furthermore, the "[h]ypothetical questions posed to [vocational experts] must include *all* limitations supported by medical evidence in the record." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). Claimants have the burden of proof at this step of the sequential evaluation. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); 20 C.F.R. § 404.1512(a); 20 C.F.R. § 405.1520(a)(4)(i)-(iv).

In making a proper RFC determination, the ALJ must consider all relevant evidence in the record, even as to limitations that are not severe. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014). From the evidence in the record, the ALJ must build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). The Seventh Circuit has explained that when posing hypotheticals to a VE, an ALJ must explicitly account for all limitations supported by the medical evidence, unless the VE has independently reviewed the medical record. *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018).

First, the Court notes that Rhynettia B.'s statement that the ALJ found she could perform her past relevant work as "actually" performed, is incorrect. This is not a case where the ALJ found Rhynettia B. capable of performing her past work as she performed it; rather the ALJ specifically noted that Rhynettia B. could perform this relevant work as *generally* performed, considering her RFC as compared with the physical and mental demands of that work. [Filing No. 7-2 at 28 (emphasis added).] This finding appears based, in part, on the VE's testimony about how the job

is performed in the national economy and that testimony was based on the DOT. [*See* Filing No. 7-2 at 51.] If Rhynettia B.'s job was a composite job, this would have been error.

In the ALJ's RFC decision, she noted Rhynettia B.'s hearing testimony, in that "the primary reasons she stopped working were back pain and respiratory issues, explaining that her symptoms included shortness of breath that worsens when lying down, fatigue and back pain typically at a 7 or 8 out of 10 severity level" and that she "estimated she could walk for 10 minutes and lift up to 5 pounds." [Filing No. 7-2 at 26.] After listening to Rhynettia B.'s description of her past work, the VE characterized her job as "Bow string maker" and classified it as light. [Filing No. 7-2 at 51.] The VE testified that the bow-string maker job was performed by Rhynettia B. at the light to medium level under the occupation at DOT #732-684-042. [Filing No. 7-2 at 51.]

The ALJ then posed the RFC adopted in her written opinion as a hypothetical to the VE. [Filing No. 7-2 at 51 ("assume a hypothetical individual who could occasionally lift 20 pounds or frequently lift or carry 10 pounds, could stand or walk for six hours, and sit for six hours per eight-hour day, could occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, could occasionally balance on level surfaces, occasionally stopping, kneeling, couching, and crawling, the individual should avoid concentrated exposure to fumes, odors, ducts, and gasses, could perform simple, routine, repetitive tasks, and could maintain sufficient attention and concentration to perform those tasks with reasonable pace and persistence the individual should have no fast-paced production work or quotas.".] In response to the hypothetical question from the ALJ, the VE opined that Rhynettia B. can perform her past work. [Filing No. 7-2 at 51-52.] The ALJ then asked the VE the hypothetical with additional limitations: "And if the individual would need a sit/stand option, so the limitations of hypothetical #1 would be the same, but the individual would need to sit for 30 minutes after standing for 30 minutes, would need to alternate throughout the eight-hour

day."[Filing No. 7-2 at 52.] The VE responded that "[t]ime on feet being seated is already in the hypothetical, and it's as she testified to." [Filing No. 7-2 at 52-53.] The ALJ added a further limitation, "[w]hat if an individual at any exertional level would be off-task 20% of the workday, would there be any work?" [Filing No. 7-2 at 53.] The VE testified that "[n]o unskilled work." [Filing No. 7-2 at 53.] The ALJ then added a final limitation, "[i]f an individual were absent three days per month, would there be any work?" [Filing No. 7-2 at 53.] The VE testified that "[n]o unskilled work." [Filing No. 7-2 at 53.]

When asked if his testimony was "in accordance with the DOT," the VE responded: "Except for things not listed, which would include off-task, absence, time on feet, being seated, sit/stand option, [INAUDIBLE] climbing. That was all based on my education, training, and work history." [Filing No. 7-2 at 53.] Plaintiff did not object to the VE's characterization of her past work as a bow string maker, nor did she argue at the hearing that her past work was a composite job.[4] [*See generally* Filing No. 7-2 at 35-54.]

Following the hearing and the VE's testimony, the ALJ concluded that Rhynettia B. could perform her past work as generally performed. [Filing No. 7-2 at 28.] The ALJ was entitled to rely on the VE's unchallenged and uncontradicted testimony that Plaintiff can perform her past work as performed. *Dwight W.B. v. Kijakazi*, 2022 WL 985733, at *5 (S.D. Ind. March 31, 2022). As such, the ALJ did not err at Step Four.

**B.  Evaluation of Nurse Mullin's Opinion**

---

[4] "Where a claimant's past work was clearly a composite job, an ALJ 'may not find a claimant capable of performing [his] past relevant work on the basis that [he] can meet some of the demands of [his] previous position, but not all of them.'" *Combs v. Berryhill*, No. 1:16-cv-02386-JMS-TAB, 2017 WL 2728619, at *6 (S.D. Ind. June 26, 2017) (quoting *Peterson v. Astrue*, Cause No. 1:09-CV-00209, 2010 WL 3219293, at *6 (N.D. Ind. Aug. 12, 2010)).

Next, Rhynettia B. contends that the ALJ failed to consider Nurse Mullin's opinion. [Filing No. 12 at 27.] Rhynettia B. argues that NP Mullins completed a physical RFC questionnaire and the ALJ improperly found this opinion to only be "somewhat persuasive" and "somewhat consistent with and supported by the substantial evidence of record discussed in this decision, which supports some different limitations." [Filing No. 12 at 28 (citing Filing No. 7-7 at 179).] Rhynettia B. argues that the ALJ's decision only compared NP Mullins' opinion to Dr. Majid's consultive exam which included a normal gait and 5/5 strength, to find that NP Mullins' opinion was only somewhat persuasive and consistent. [Filing No. 12 at 28-29.] She contends that the ALJ failed to point to which aspects of the opinion were inconsistent, not persuasive, or why.

The Commissioner responds that substantial evidence supported the ALJ's conclusion of NP Mullins' opinion, namely that other evidence, including the opinion from Dr. Majid suggested Rhynettia B. was not as limited as opined by NP Mullins. [Filing No. 14 at 5.] The Commissioner argues that the ALJ's conclusion was reasonable through including environmental limitations and some form of a sit-stand option. [Filing No. 14 at 5.]

Because Rhynettia B. filed her application after March 2017, 20 C.F.R. § 416.920c governs her claim. Under this framework, ALJs will evaluate all medical opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 416.920c. The opinion of a claimant's treating physician no longer receives controlling weight. 20 C.F.R. § 416.920c(a). "Instead, the most important factors are a medical opinion's supportability and consistency with the evidence in the record." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022) (internal quotation marks omitted). These are the factors that the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 416.920c(b).

For an opinion to be "supportable," it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 416.920c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Similarly, for an opinion to be "consistent," it must be, reductively, consistent with the record. 20 C.F.R. § 416.920c(c)(2). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

Regarding NP Mullins' statement, "the ultimate determination of disability is reserved for the Commissioner, and summarily asserting that the claimant is disabled does not suffice under the Commissioner's regulations." *Albert*, 34 F.4th at 616. *See* 20 C.F.R. § 404.1520b(c)(3) (specifying that "[s]tatements that you are or are not disabled," or statements about whether an individual can or cannot work constitute evidence that "is inherently neither valuable nor persuasive"). Because Rhynettia B. filed her application after March 2017, 20 C.F.R. § 404.1520c governs her claim. However, if a statement is reserved for the Commissioner, an ALJ need not evaluate the opinion under § 404.1520c because the regulations are clear that the ALJ "will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c).

On January 20, 2021, NP Mullins completed a physical RFC questionnaire. [Filing No. 7-7 at 175-79.] Of consequence, the ALJ noted that NP Mullins opined Rhynettia B. could sit for at least 6 hours in an 8-hour workday, rarely life less than 10 pounds, never lift more than 10 pounds,

11

required leg elevation while sitting, could stand for only a few minutes before becoming dizzy, could not handle concentrated exposure to dust, could not handle postural maneuvers, and would miss more than four days of work per month. [Filing No. 7-2 at 27; Filing No. 7-7 at 175-79.]

Here, substantial evidence supports the ALJ finding NP Mullins' opinion somewhat persuasive and consistent. The Court notes that an ALJ's decision does not require "tidy packaging" and should be "read as a whole." *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). The ALJ expressly stated that she found NP Mullins' opinion to be "somewhat persuasive" and "somewhat consistent with and supported by the substantial evidence of record discussed in this discission, which supports some different limitations." [Filing No. 7-2 at 27.] The ALJ noted that Rhynettia B. indeed required some limitations opined by NP Mullins, however other evidence from examinations suggested she was less limited as NP Mullins opined. [Filing no. 7-2 at 27.] The ALJ thus adopted the following limitations in the RFC:

> the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional climbing of ramps or stairs; never climbing ladders, ropes, or scaffolds; occasional balancing on level surfaces; and occasional stooping, kneeling, crouching, and crawling. She must avoid concentrated exposure to fumes, odors, dust, and gases.

[Filing No. 7-2 at 25.]

As mentioned above, in the ALJ's RFC analysis, she remarked that Rhynettia B. reported at her hearing that the primary reasons she stopped working were back pain and respiratory issues and noted her ability to walk for 10 minutes and lift up to 5 lbs. [Filing No. 7-2 at 26.] Further the ALJ noted that Rhynettia B. reported to Dr. Melissa Sprinkle, Psy.D.'s that she quit her past relevant work due to threats made by a disgruntled employee and that she has frequent anxiety of harm. [Filing No. 7-2 at 26; Filing No. 7-7 at 155.] Lastly the ALJ identified the state agency consultants' opinions regarding her postural and mental impairments. [Filing No. 7-2 at 26.]

Between Rhynettia B.'s testimony, the opinions from State Agency consultants, and other medical evidence, there was substantial evidence in the record on which the ALJ could conclude the consistency of NP Mullins' opinion. In doing so, the ALJ properly pointed to inconsistencies in NP Mullins' opinion as compared to other record evidence. As such, the Court finds that the ALJ accurately built a logical bridge in this case. *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir. 2010). To the extent that Rhynettia B. wants us to reweigh NP Mullins opinion ourselves, this would be no less than substituting our judgment for that of the ALJ's, an impermissible step. *See Zoch*, 981 F.3d at 602.

## IV.
## CONCLUSION

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Rhynettia B. benefits. Final judgment will issue by separate entry.

Date: 3/21/2023

*[signature]*
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**